IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| RYAN DAVEY<br>16 Hager Street<br>Hubbard, Ohio 44425<br><br>On Behalf of Himself and All Other<br>Similarly Situated,<br><br>         Plaintiff,<br><br>v.<br><br>JOY CONE CO.<br>3435 Lamor Road<br>Hermitage, Pennsylvania 16148<br><br>         Defendant. | Case No.<br><br>Judge<br><br><br>**COMPLAINT**<br><br>**(Jury demand endorsed hereon)** |

Now comes Plaintiff Ryan Davey ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendant Joy Cone Co. ("Defendant"), states and alleges the following:

**INTRODUCTION**

1. This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff also brings this action as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("PMWA").

**JURISDICTION AND VENUE**

3. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. The Court has personal jurisdiction over Defendant because its headquarters and principal place of business is in Pennsylvania.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's headquarters and principal place of business is located in this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

**PARTIES**

7. At all material times, Plaintiff was and is a citizen of the United States and a resident of Trumbull County, Ohio.

8. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and 43 P.S. § 333.103.

9. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10. At all material times, Defendant was and is a Pennsylvania corporation headquartered in Mercer County, Pennsylvania, with its principal place of business located at: 3435 Lamor Road Hermitage, Pennsylvania 16148.

11. At all material times, Defendant was and is an employer within the meaning of 29 U.S.C. § 203(d).

12. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

13. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

14. Plaintiff's written consent to this action is attached hereto as Exhibit 1.

15. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

16. Defendant, a manufacturer of ice cream cones and related food products, operates several manufacturing plants in the United States, including in Hermitage, Pennsylvania, Le Mars, Iowa, and Flagstaff, Arizona.

17. From approximately February 2023 through July 14, 2024, Plaintiff was employed by Defendant as a manufacturing employee at Defendant's manufacturing plant in Hermitage, Pennsylvania.

18. Specifically, Plaintiff worked as a cone packer.

19. At all material times, Defendant employed similarly situated manufacturing employees at each of its manufacturing plants, including but not limited to: cone packers, operators, quality assurance technicians, production assistants, room attendants, and room leads (hereinafter "manufacturing employees").

20. Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

21. Defendant classified Plaintiff and other similarly situated manufacturing employees as non-exempt employees.

22. Defendant paid Plaintiff and other similarly situated manufacturing employees an hourly wage.

23. Plaintiff and other similarly situated manufacturing employees were regularly scheduled to work 40 or more hours per week.

24. Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

25. Plaintiff estimates that he worked on average, approximately 40 to 42 hours or more per workweek during his employment with Defendant when not required to work mandatory overtime. Plaintiff estimates that he worked on average 46 to 48 hours or more per workweek during mandatory overtime weeks.

**Failure to Pay for All Hours Worked**

26. Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, regardless of when they clocked out, and were not paid for work performed before and after their scheduled start and stop times, including: (a) changing into and out of my personal protective equipment, including but not limited to gloves, hairnets and/or beard nets, ear plugs, safety glasses, and non-slip shoes; (b) washing their hands; (c) obtaining their work assignments/locations; and (d) walking to and from their assigned area of the manufacturing floor.

27. The pre-shift work—including changing into personal protective equipment, washing hands, and walking to their assigned area of the manufacturing floor—took upwards of approximately 10 minutes or more. In order to start work on time, Plaintiff and other similarly situated employees had to arrive at least 10 minutes early to start this pre-shift work.

28. Similarly, the post-shift work—walking from the manufacturing floor and changing out of their personal protective—took upwards of approximately 10 minutes or more.

29. In addition, Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and continued performing their manufacturing work after their shift end times to complete tasks that were not finished at the end of their shifts.

30. Defendant knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

**Failure to Pay for Donning Time**

31. Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including gloves, hairnets and/or beard nets, ear plugs, safety glasses, and non-slip shoes.

32. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

33. Additionally, Defendant required Plaintiff and other similarly situated manufacturing employees to wear the personal protective equipment, required them to put it on

and take it off at work so that it was maintained in a safe, sanitary, and reliable condition, and did not want them to take it home.

34. The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for Defendant's benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient manufacturing process.

35. Donning personal protective equipment was an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties.

36. Plaintiff and other similarly situated manufacturing employees could not dispense with donning personal protective equipment.

37. Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**Failure to Pay for Washing Hands and Obtaining Work Assignment**

38. After donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees were required to walk to the sink to wash their hands and to check where they were assigned to work that shift.

39. Hand washing was certainly integral and indispensable to Plaintiff and other similarly situated manufacturing employees' principal activities of manufacturing food products for human consumption.

40. Checking their work assignment/location was integral and indispensable to Plaintiff and other similarly situated manufacturing employees' principal activities.

41. Hand washing was required by Defendant, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the USDA, and was performed for Defendant's benefit in that it helped promote a more safe and sanitary manufacturing process.

42. Washing hands was an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties.

43. Plaintiff and other similarly situated manufacturing employees could not dispense with washing their hands and checking their work assignment/location if they were to perform their job.

44. Plaintiff and other similarly situated manufacturing employees were not paid for time spent walking to the sink, washing their hands, and checking their work assignment.

### Failure to Pay for Post-Donning Walk Time

45. After donning their personal protective equipment, washing their hands, and obtaining their work assignment/location, Plaintiff and other similarly situated manufacturing employees walked from the area where they changed into their personal protective equipment to their assigned area of the manufacturing floor. Such time constitutes "post-donning walk time" and is compensable under the continuous work-day rule.

46. Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

### Failure to Pay for Performing Manufacturing Work

47. Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and were often required to work past the end of their shift times to complete manufacturing tasks that were not finished and/or wait for the next shift at the end of their scheduled shift stop time.

48. The time Plaintiff and other similarly situated employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

49. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work before their shift start time after their shift stop time.

### Failure to Pay for Pre-doffing Walk Time

50. After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the manufacturing floor to the area in which they changed out of their personal protective equipment. Such time constitutes "pre-doffing walk time", and is compensable under the continuous work-day rule.

51. Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

### Failure to Pay for Doffing Time

52. After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

53. The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant, the Occupational Safety and Health

Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for Defendant's benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient manufacturing process.

54. Doffing personal protective equipment was an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties.

55. Plaintiff and other similarly situated manufacturing employees could not dispense doffing their personal protective equipment if they are to perform their manufacturing work.

56. Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

### Failure to Pay Overtime Compensation

57. As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

58. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

### Defendant Willfully Violated the FLSA

59. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

60. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct was prohibited by the FLSA.

61. Defendant had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid worked referenced above and not compensating them for time spent performing such work.

62. Defendant knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendant required them to perform it and supervisors observed them performing it.

63. Defendant, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendant scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

64. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

65. Defendant knew or should have known that its policies and practices violate the law, and Defendant did not make and has not made a good faith effort to comply with the FLSA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law has carried out its unlawful pattern, practice, and policy of not paying its Plaintiff other similarly situated manufacturing employees for all hours worked. Defendant's method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

66. Upon information and belief, Defendant failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated manufacturing employees employed by Defendant.

## COLLECTIVE ACTION ALLEGATIONS

67. Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

68. The group of individuals Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of this collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All current and former non-exempt manufacturing employees of Joy Cone, Co. who worked at one or more of its manufacturing plants in the United States at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("FLSA Class").

69. Plaintiff is unable, at this time, to state the exact size of the FLSA Class, but upon information and belief, avers that it consists of more than 500 persons.

70. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

71. The similarly situated manufacturing employees are known to Defendant and are readily identifiable through its payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively

11

adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

72. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

### PENNSYLVANIA CLASS ACTION ALLEGATIONS

73. Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the class ("the Pennsylvania Class") defined as:

> All current and former non-exempt manufacturing employees of Joy Cone, Co. who worked at one or more of its manufacturing plants in Pennsylvania at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("Pennsylvania Class").

74. The Pennsylvania Class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state at this time the exact size of the potential Pennsylvania Class, but upon information and belief, avers that it consists of at least 50 persons.

75. There are questions of law or fact common to the Pennsylvania Class, including but not limited to the following: (a) whether Defendant failed to pay overtime compensation to its manufacturing employees for hours worked in excess of 40 each workweek; and (b) what amount of monetary relief will compensate Plaintiff and other members of the class for Defendant's violation of the PMWA, 43 P.S. § 333.101, *et seq*.

76. The claims of the named Plaintiff Ryan Davey are typical of the claims of other members of the Pennsylvania Class. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of the other Pennsylvania Class members.

77. Named Ryan Davey will fairly and adequately protect the interests of the Pennsylvania Class. His interests are not antagonistic to, but rather are in unison with, the interests of the other Pennsylvania Class members. The named Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Ohio Class in this case.

78. The questions of law or fact that are common to the Pennsylvania Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Pennsylvania Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

79. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Pennsylvania Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Pennsylvania Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
## Violations of Fair Labor Standards Act

80. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

81. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

82. Defendant intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

83. Defendant's conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

84. Defendant's actions and/or omissions were not in good faith.

85. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

86. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
### (Violations of the Pennsylvania Minimum Wage Act)

87. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

88. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violated the PMWA, 43 P.S. § 333.101, *et seq.*

89. Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly situated welders violated the PMWA, 43 P.S. § 333.101, *et seq.*

90. By engaging in the above-mentioned conduct, Defendant willfully, knowingly and/or recklessly violated the provisions of the PMWA , 43 P.S. § 333.101, *et seq.*

91. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the PMWA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

B. Order prompt notice to all FLSA Class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C. Issue an order certifying the Pennsylvania Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

D. Award Plaintiff and the classes he represents actual damages for unpaid wages;

E. Award Plaintiff and the classes he represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes he represents. under the FLSA and PMWA;

F. Award Plaintiff and the classes he represents pre- and post-judgment interest at the statutory rate;

G. Award Plaintiff and the classes he represents attorneys' fees, costs, and disbursements; and

H.  Award Plaintiff and the classes he represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Lori M. Griffin*
Lori M. Griffin (OH 0085241)
Anthony J. Lazzaro (OH 0077962)
Matthew S. Grimsley (OH 0092942)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
lori@lazzarolawfirm.com
anthony@lazzarolawfirm.com
matthew@lazzarolawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

/s/ *Lori M. Griffin*
Lori M. Griffin (OH 0085241)

*Attorney for Plaintiff*

16

**CONSENT FORM**

1. I consent and agree to pursue my claims for unpaid overtime and/or minimum wages through a lawsuit or arbitration case filed against my employer.

2. I understand that the claims are brought under the Fair Labor Standards Act and/or state wage and hour laws. I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I intend to pursue my claim individually, unless and until the court or parties certify the case as a collective or class action. If someone else serves as the class representative(s), then I designate the class representative(s) as my agent(s) to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning fees and costs, the entering into a settlement agreement with my employer, and all other matters pertaining to this action.

4. In the event the case is not conditionally certified or decertified after conditional certification, I authorize Plaintiff's counsel to use this Consent Form to re-file my claims in a separate or related action against my employer. In the event my claim must be brought in arbitration, I authorize Plaintiff's counsel to file a claim for arbitration on my behalf.

5. I understand that Plaintiff's counsel agrees to represent me on a contingency fee basis without any prepayment of attorneys' fees or costs. The fees and costs will either be subtracted from the total recovery obtained from my employer in the amount of thirty-three and one-third percent (33-1/3%) of my total recovery plus costs expended by Plaintiff's counsel on my behalf, or they may be paid separately by my employer. If there is no recovery, Plaintiff's counsel will not be paid for their work on this case.

**Employer:**

Joy Cone Co.

Signature: _Ryan Davey (Aug 15, 2024 17:04 EDT)_   Date: Aug 15, 2024

Ryan Davey
162 Hager Street
Hubbard, OH 44425
rdavey35@aol.com

Exhibit A